IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMER SALAH, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:17-cv-08479 |
| SYNCHRONY BANK, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

**NOW COMES**, TAMER SALAH, by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, SYNCHRONY BANK, as follows:

### NATURE OF THE ACTION

1. This is an action brought by a consumer seeking redress for violation(s) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists over the Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

3. Supplemental jurisdiction exists over the Illinois Consumer Fraud and Deceptive Business Practices Act claim(s) under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims took place in the Northern District of Illinois.

**PARTIES**

5. TAMER SALAH ("Salah") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 7222 West 154th Place, Orland Park, Illinois 60462.

6. SYNCHRONY BANK ("Synchrony") provides banking products and services. It provides certificates of deposit, money market and savings accounts, and IRAs, as well as online and mobile banking options. Synchrony Bank also issues credit cards. Synchrony Bank was formerly known as GE Capital Retail Bank and changed its name to Synchrony Bank in June 2014. The company was founded in 1988 and is based in Draper, Utah. Synchrony Bank operates as a subsidiary of Synchrony Financial.

**FACTUAL ALLEGATIONS**

7. On or about September 1, 2015, Salah obtained a JCPenney credit card ending in 9285 issued by Synchrony ("JCPenney account").

8. Upon information and belief, Salah provided Synchrony with his cellular telephone number ending in 0775 at the time he applied for the JCPenney account.

9. At all times relevant, Salah was the sole operator, possessor, and subscriber of the cellular telephone number ending in 0775.

10. Between 2015 and the present, Salah made various charges on the JCPenney account, amassing a balance of $1,204.00 ("subject debt").

11. Due to his deteriorating financial condition, Salah defaulted on the subject debt.

12. In September 2017, Synchrony began placing collection calls to Salah in an effort to collect the subject debt.

13. On September 2, 2017, Salah answered a collection call from Synchrony and after being informed of his JCPenney account's past due status, told the Synchrony representative to "stop calling."

14. When Salah answered the aforementioned call from Synchrony, he was greeted by a noticeable period of "dead air" while Synchrony's telephone system attempted to connect Salah to a live agent.

15. Specifically, there would be an approximate 3 second pause between the time Salah said "hello," and the time that a live agent introduced them self as a representative of Synchrony attempting to collect on the subject debt.

16. Salah's demand that Synchrony cease calls to his cellular phone fell on deaf ears and Synchrony continued to place collection calls to Salah's cellular telephone.

17. In total, Synchrony placed no less than 177 collection calls to Salah's cellular telephone after he demanded that the calls cease, including but not limited to calls on the following dates:

| | |
|---|---|
| September 3, 2017 at 8:20 a.m. | October 2, 2017 at 1:33 p.m. |
| September 3, 2017 at 9:50 a.m. | October 2, 2017 at 3:13 p.m. |
| September 3, 2017 at 12:44 p.m. | October 3, 2017 at 8:17 a.m. |
| September 3, 2017 at 2:36 a.m. | October 3, 2017 at 9:42 a.m. |
| September 3, 2017 at 4:54 p.m. | October 3, 2017 at 11:56 a.m. |
| September 4, 2017 at 8:39 a.m. | October 3, 2017 at 5:10 p.m. |
| September 4, 2017 at 10:59 a.m. | October 3, 2017 at 7:05 p.m. |
| September 4, 2017 at 12:27 p.m. | October 4, 2017 at 8:35 a.m. |
| September 4, 2017 at 3:03 p.m. | October 4, 2017 at 9:54 a.m. |
| September 4, 2017 at 6:28 p.m. | October 4, 2017 at 12:03 p.m. |
| September 6, 2017 at 9:31 a.m. | October 4, 2017 at 3:04 p.m. |
| September 6, 2017 at 12:03 p.m. | October 4, 2017 at 6:36 p.m. |
| September 6, 2017 at 1:19 p.m. | October 5, 2017 at 8:18 a.m. |
| September 6, 2017 at 5:28 p.m. | October 5, 2017 at 10:58 a.m. |
| September 6, 2017 at 6:48 p.m. | October 5, 2017 at 12:14 p.m. |

| | |
|---|---|
| September 8, 2017 at 8:24 a.m. | October 5, 2017 at 6:00 p.m. |
| September 8, 2017 at 11:04 a.m. | October 5, 2017 at 7:43 p.m. |
| September 8, 2017 at 12:42 p.m. | October 6, 2017 at 8:20 p.m. |
| September 8, 2017 at 6:48 p.m. | October 6, 2017 at 9:58 a.m. |
| September 8, 2017 at 8:47 p.m. | October 6, 2017 at 11:53 a.m. |
| September 12, 2017 at 9:49 a.m. | October 7, 2017 at 8:03 a.m. |
| September 12, 2017 at 12:52 p.m. | October 7, 2017 at 9:43 a.m. |
| September 12, 2017 at 4:41 p.m. | October 7, 2017 at 12:07 p.m. |
| September 12, 2017 at 8:08 p.m. | October 7, 2017 at 2:41 p.m. |
| September 14, 2017 at 11:31 a.m. | October 8, 2017 at 8:06 a.m. |
| September 14, 2017 at 12:41 p.m. | October 8, 2017 at 9:19 a.m. |
| September 14, 2017 at 4:09 p.m. | October 8, 2017 at 10:35 a.m. |
| September 14, 2017 at 7:21 a.m. | October 8, 2017 at 11:51 a.m. |
| September 16, 2017 at 9:06 a.m. | October 8, 2017 at 2:44 p.m. |
| September 16, 2017 at 10:35 a.m. | October 9, 2017 at 8:23 a.m. |
| September 16, 2017 at 2:56 p.m. | October 9, 2017 at 10:30 a.m. |
| September 17, 2017 at 8:33 a.m. | October 9, 2017 at 12:00 p.m. |
| September 17, 2017 at 9:14 a.m. | October 9, 2017 at 2:01 p.m. |
| September 17, 2017 at 9:44 a.m. | October 9, 2017 at 4:52 p.m. |
| September 17, 2017 at 11:02 a.m. | October 10, 2017 at 8:05 a.m. |
| September 17, 2017 at 1:32 p.m. | October 10, 2017 at 10:28 a.m. |
| September 18, 2017 at 8:31 a.m. | October 10, 2017 at 12:03 p.m. |
| September 18, 2017 at 10:14 a.m. | October 10, 2017 at 2:25 p.m. |
| September 18, 2017 at 1:30 p.m. | October 11, 2017 at 8:05 a.m. |
| September 18, 2017 at 3:03 p.m. | October 11, 2017 at 9:23 a.m. |
| September 18, 2017 at 8:14 p.m. | October 11, 2017 at 1:27 p.m. |
| September 20, 2017 at 8:06 a.m. | October 11, 2017 at 5:36 p.m. |
| September 20, 2017 at 9:26 a.m. | October 12, 2017 at 12:23 p.m. |
| September 20, 2017 at 11:19 a.m. | October 12, 2017 at 2:24 p.m. |
| September 20, 2017 at 2:29 p.m. | October 12, 2017 at 5:55 p.m. |
| September 20, 2017 at 5:29 p.m. | October 13, 2017 at 9:09 a.m. |
| September 23, 2017 at 8:20 a.m. | October 13, 2017 at 10:17 a.m. |
| September 23, 2017 at 9:25 a.m. | October 14, 2017 at 8:07 a.m. |
| September 23, 2017 at 11:58 a.m. | October 14, 2017 at 9:16 a.m. |
| September 23, 2017 at 2:43 p.m. | October 14, 2017 at 10:21 a.m. |
| September 24, 2017 at 8:54 a.m. | October 14, 2017 at 11:23 a.m. |
| September 24, 2017 at 10:33 a.m. | October 14, 2017 at 2:22 p.m. |
| September 24, 2017 at 12:43 p.m. | October 15, 2017 at 8:11 a.m. |
| September 24, 2017 at 3:29 p.m. | October 15, 2017 at 9:14 a.m. |

September 25, 2017 at 9:31 a.m.
September 25, 2017 at 11:50 p.m.
September 25, 2017 at 1:13 p.m.
September 25, 2017 at 5:07 p.m.
September 25, 2017 at 8:01 p.m.
September 26, 2017 at 8:52 a.m.
September 26, 2017 at 10:48 a.m.
September 26, 2017 at 12:45 p.m.
September 26, 2017 at 3:29 p.m.
September 26, 2017 at 5:09 p.m.
September 27, 2017 at 8:26 a.m.
September 27, 2017 at 9:57 a.m.
September 27, 2017 at 11:47 a.m.
September 27, 2017 at 2:13 p.m.
September 27, 2017 at 5:10 p.m.
September 28, 2017 at 8:14 a.m.
September 28, 2017 at 9:26 a.m.
September 28, 2017 at 10:47 a.m.
September 28, 2017 at 2:044 p.m.
September 28, 2017 at 5:57 p.m.
September 29, 2017 at 9:29 a.m.
September 29, 2017 at 10:37 a.m.
September 29, 2017 at 12:17 p.m.
September 29, 2017 at 4:03 p.m.
September 29, 2017 at 7:17 p.m.
September 30, 2017 at 8:24 a.m.
September 30, 2017 at 10:27 a.m.
September 30, 2017 at 2:56 p.m.
October 1, 2017 at 8:19 a.m.
October 1, 2017 at 9:20 a.m.
October 1, 2017 at 10:51 a.m.
October 1, 2017 at 12:52 p.m.
October 1, 2017 at 4:54 p.m.
October 2, 2017 at 9:32 a.m.
October 2, 2017 at 12:09 p.m.

October 15, 2017 at 11:01 a.m.
October 15, 2017 at 12:12 p.m.
October 15, 2017 at 1:46 p.m.
October 16, 2017 at 8:41 a.m.
October 16, 2017 at 10:27 a.m.
October 16, 2017 at 12:16 p.m.
October 16, 2017 at 1:25 p.m.
October 16, 2017 at 5:42 p.m.
October 17, 2017 at 8:15 a.m.
October 17, 2017 at 12:02 p.m.
October 17, 2017 at 2:14 p.m.
October 17, 2017 at 5:22 p.m.
October 18, 2017 at 8:25 a.m.
October 18, 2017 at 10:31 a.m.
October 18, 2017 at 11:46 a.m.
October 18, 2017 at 4:17 p.m.
October 19, 2017 at 8:02 a.m.
October 19, 2017 at 9:44 a.m.
October 19, 2017 at 12:42 p.m.
October 19, 2017 at 5:06 p.m.
October 20, 2017 at 8:16 a.m.
October 20, 2017 at 10:30 a.m.
October 20, 2017 at 12:02 p.m.
October 20, 2017 at 2:43 p.m.
October 20, 2017 at 6:15 p.m.
October 21, 2017 at 8:00 a.m.
October 21, 2017 at 9:05 a.m.
October 21, 2017 at 10:15 a.m.
October 21, 2017 at 11:42 a.m.
October 21, 2017 at 1:40 p.m.
October 22, 2017 at 8:16 a.m.
October 22, 2017 at 9:22 a.m.
October 22, 2017 at 11:42 a.m.
October 22, 2017 at 2:27 p.m.

18. Upon information and belief, Synchrony placed the collection calls to Salah's cellular telephone using a predictive dialing system, an automated telephone dialing system that is commonly used in the credit servicing industry to collect defaulted credit card debt.

19. Synchrony placed calls to Salah's cellular phone from the number (330) 433-5966.

20. At all times relevant, Salah was financially responsible for his cellular telephone equipment and services.

## DAMAGES

21. Synchrony's collection calls have severely disrupted Salah's everyday life and overall well-being.

22. Synchrony's collection calls have resulted in intrusion and occupation of Salah's cellular services, thus impeding receipt of other calls.

23. Synchrony's collection calls have resulted in unnecessary depletion of Salah's cellular battery requiring him to incur electricity charges to recharge his cellular telephone.

24. Synchrony's phone harassment campaign and illegal collection activities have caused Salah actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of Salah's cellular telephone capacity, wasting Salah's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

25. Concerned about the violations of his rights and invasion of his privacy, Salah was forced to seek the assistance of counsel to file this action to compel Synchrony to cease its unlawful conduct.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION

26. Salah restates and realleges paragraphs 1 through 25 as though fully set forth herein.

27. Synchrony placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Salah's cellular telephone using an automatic telephone dialing system ("ATDS") without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

28. The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

29. Upon information and belief, based on the lack of prompt human response during the phone calls in which Salah answered, Synchrony used a predictive dialing system to place calls to Salah's cellular telephone.

30. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

31. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

32. Upon information and belief, the predictive dialing system employed by Synchrony transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

33. Synchrony violated the TCPA by placing no less than 177 phone calls to Salah's cellular phone from September 2017 through the present day using an ATDS without his consent.

34. As pled above, any prior consent, if any, was revoked by Salah on September 2, 2017 during a phone call with Synchrony.

35. As pled above, Salah was severely harmed by Synchrony's collection calls to his cellular phone.

36. Upon information and belief, Synchrony has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular phones.

37. Upon information and belief, Synchrony knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Salah's expense.

38. Synchrony acted through its agents, employees, and/or representatives at all times relevant.

39. Pursuant to 47 U.S.C. §227(b)(3)(B), Synchrony is liable to Salah for a minimum of $500 per phone call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Synchrony's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Salah is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

   **WHEREFORE**, Plaintiff, TAMER SALAH, respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

  b. Awarding Salah damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

  c. Enjoining Synchrony from contacting Salah; and

  d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

40. Salah restates and realleges paragraphs 1 through 25 as though fully set forth herein.

41. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

42. Salah is a "person" as defined by 815 ILCS § 505/1(c).

43. Salah is a "consumer" as defined by 815 ILCS § 505/1(e).

44. Synchrony is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

45. It was unfair for Synchrony to subject Salah to a relentless telephone harassment campaign despite his request that Synchrony cease placing collection calls to him.

46. It was unfair for Synchrony to place collection calls to Salah four to five times per day despite his request that Synchrony cease placing collection calls to him.

47. It was unfair for Synchrony to place no less than 177 collection calls to Salah from September 2017 through the present after he demanded that the collections calls cease.

48. Synchrony's unfair business practices offend public policy and are oppressive by any standard because Salah had no choice but to submit to Synchrony's relentless telephone harassment campaign.

49. Synchrony's unfair business practices shed light on an industry where business decisions are driven by profit, with complete disregard for the rights of consumers.

50. Moreover, Synchrony's unfair business practices offend public policy because they needlessly subject consumers to unconsented-to calls, resulting in significant injury to a large number of consumers in the form of invasion of privacy and nuisance.

51. Synchrony's unfair business practices are oppressive because receiving unconsented-to calls can leave consumers without any practical alternatives other than turning off their cellular phones.

52. Upon information and belief, Synchrony systematically places collection calls to consumers in Illinois (and nationwide) to induce payment on credit card accounts despite consumers' requests that Synchrony cease placing the collection calls.

53. As pled above, Synchrony's unfair business practices resulted in significant harm to Salah, and has the potential to cause significant harm to a large number of consumers.

54. An award of punitive damages is appropriate because Synchrony's unfair business practices were outrageous, wanton, and willful, and showed a conscious disregard and indifference for the rights of Salah, and consumers generally.

**WHEREFORE**, Plaintiff, TAMER SALAH, respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a.   Enter judgment in his favor and against Synchrony;

   b.   Award Salah his actual damages in an amount to be determined at trial;

    c.    Award Salah punitive damages in an amount to be determined at trial;

    d.    Award Salah his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

    e.    Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

November 21, 2017                                               Respectfully submitted,

                                                                            */s/ Joseph Scott Davidson*

                                                                            Joseph Scott Davidson
                                                                            Mohammed Omar Badwan
                                                                            **SULAIMAN LAW GROUP, LTD.**
                                                                            2500 South Highland Avenue
                                                                            Suite 200
                                                                            Lombard, Illinois 60148
                                                                            +1 630-575-8181
                                                                            jdavidson@sulaimanlaw.com
                                                                            mbadwan@sulaimanlaw.com

                                                                            *Counsel for Tamer Salah*